UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERGON OIL PURCHASING, INC. | CIVIL ACTION |
| v. | NO. 16-5884 |
| CANAL BARGE COMPANY, INC., SAYBOLT, L.P., AND SOUTHWEST SHIPYARD, L.P. | SECTION: "N" (3) |

### ORDER AND REASONS

In this action, Plaintiff Ergon Oil Purchasing, Inc., alleges that Defendant Southwest Shipyard, L.P. ("Southwest") failed to properly strip and clean barge CBC 7078, prior to loading Plaintiff's cargo onto the vessel, which caused the cargo to be damaged and contaminated. Plaintiff thus seeks an award of damages.[1] Contending the Court lacks personal jurisdiction over it, Southwest has filed, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the motion to dismiss (Rec. Doc. 13) now before the Court. Having carefully reviewed the parties' submissions, the record herein, and applicable law, **IT IS ORDERED** that the motion to dismiss is **GRANTED** for the reasons stated herein. Accordingly, **IT IS FURTHER ORDERED** that Plaintiff's claims against Southwest be and hereby are **DISMISSED WITHOUT PREJUDICE**.

---

[1] See Complaint, Rec. Doc. 1, ¶¶ 3-4.

1

**BACKGROUND**

In May 2015, Plaintiff, a Mississippi corporation, chartered barge CBC 7078 from Defendant Canal Barge Company, Inc. ("Canal Barge"), a Louisiana corporation with its principal place of business in New Orleans, Louisiana. Pursuant to the charter, Plaintiff's cargo was to be loaded onto the barge in Texas City, Texas, for transport to and discharge at Plaintiff's Vicksburg, Mississippi terminal.[2] Thereafter, the barge was to be redelivered in Lake Charles, Louisiana.[3]

In preparation for barge CBC 7078's voyage, Canal Barge contracted with Southwest for barge cleaning services to be provided at Southwest's Channelview, Texas facility prior to Plaintiff's cargo being loaded in Texas City.[4] Plaintiff, however, alleges that Southwest failed to follow cleaning instructions provided to it, leaving pre-existing substances within the barge's tanks that contaminated and damaged Plaintiff's cargo during transport.[5] As a result, Plaintiff filed this lawsuit, seeking compensatory damages from Southwest and the other defendants. With the instant motion, Southwest, a non-resident Texas corporation with its principal place of business in Channelview, Texas,[6] asks the Court to dismiss Plaintiff's claims against it for lack of personal jurisdiction.

---

[2] *Id.* at ¶ 4, ¶ 9.
[3] *Id*. at ¶¶ 3-4.
[4] *Id*. at ¶ 10.
[5] *Id.* at ¶ 16.
[6] *Id.* at ¶ 10.

## LAW AND ANALYSIS

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that personal jurisdiction exists. *See Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). When a court rules on the issue without a full evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). In determining whether a plaintiff has made a prima facie showing of jurisdiction, the court accepts the allegations in the complaint as true, unless controverted by opposing affidavits, and resolves all factual conflicts in favor of the plaintiff. *Id*. In making its determination, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir. 1985).

In this instance, for the Court to have personal jurisdiction over non-resident defendant Southwest, the Louisiana long-arm statute must confer jurisdiction consistent with constitutional due process. *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 652 (5th Cir. 2002). Louisiana's long-arm statute, Louisiana Revised Statute 13:3201, extends jurisdiction to the full limits of constitutional due process. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (*citing* LSA-R.S. 13:3201(B); *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1191 (La. 1987)). Thus, the Court's inquiry is limited to whether the exercise of

personal jurisdiction over Southwest comports with constitutional due process. *Patin*, 294 F.3d at 652.

The Due Process Clause of the Fourteenth Amendment protects a defendant from being subjected to "the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The Due Process Clause thus requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," to allow "potential defendants to structure their [] conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 472 (internal citations omitted). The requisite fair warning is satisfied when the defendant has established "minimum contacts" with the forum state and the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316.

The minimum contacts analysis requires that a non-resident defendant have purposefully availed itself of the privileges of the forum state by conducting activities there, or purposefully directing activity toward that state, thus subjecting itself to suit in that forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (internal citations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being

4

haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Thus, the necessary minimum contacts must not be "random," "fortuitous," or "attenuated," and must be initiated by the defendant and not a third party or the plaintiff. *Burger King*, 471 U.S. at 475 (internal citations omitted).

Personal jurisdiction over a non-resident defendant may be general ("all purpose") or specific ("case-linked"). *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* No. 16-466, 2017 WL 2621322, *6 (U.S. June 19, 2017) (quoting *Goodyear Dunlop Tires Operations, S.A.,* 564 U.S. at 919)). A court with general jurisdiction may hear *any* claim against that defendant even if all the incidents underlying the claim occurred in a different State." *Id.* General personal jurisdiction exists, however, only when a non-resident defendant's contacts with the forum state, though unrelated to the cause of action at issue, are so continuous and systematic as to render the defendant "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A.,*564 U.S. at 919 (citing *International Shoe*, 326 U.S. at 317); *see also BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1559 (2017) (more than 2,000 miles of railroad track and more than 2,000 employees in forum state insufficient to provide general jurisdiction because inquiry does not focus solely on magnitude of in-state contacts); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (traveling to Texas for contract negotiation, accepting checks from Houston bank, purchasing helicopters from Texas corporation, and sending personnel to Texas for training did not confer general jurisdiction over non-resident defendant).

On the other hand, a court has specific personal jurisdiction over a non-resident defendant when the litigation arises from the defendant's minimum contacts with the forum state. *Burger King*, 471 U.S. at 472 (litigation arising from non-resident's alleged breach of its contract with Florida corporation provided specific jurisdiction in Florida forum). That is, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co.,* No. 16-466, 2017 WL 2621322, at *6).

Here, Plaintiff first alleges Southwest's contacts with Louisiana are sufficiently continuous and systematic such that the Court has general jurisdiction over it. These contacts include three years (2015-2017) of annual golf tournament sponsorship for Junior Achievement of Greater New Orleans (JAGNO) and advertising in the accompanying tournament program; participation in JAGNO's 2017 bowl-a-thon; yearly attendance at the International Workboat Show in New Orleans; four or five annual sales calls in Louisiana; four fishing trips in Louisiana with Louisiana and Texas customers over the last two years; and contracts with other Louisiana businesses.[7] Applying the legal principles set forth above, the Court disagrees with Plaintiff. Annual participation in a couple of charitable events and a workboat show attended by industry members from numerous states, along with a handful of sales calls to Louisiana customers for work to be performed in Texas, cannot be said to provide Southwest with such continuous and systematic contacts with Louisiana as to render it essentially at home there.

---

[7] *See* Rec. Doc. 18 at 8; Rec. Doc. 13-2 at 2.

This is particularly true given the nature and situs of Southwest's operations. As urged by Southwest, all of its work is carried out at its Texas facilities and it has no employees who regularly carry out work in Louisiana. Rather, Southwest's gas freeing and cleaning services, barge and boat repair, and other services, are provided to vessels from Louisiana and other states navigating near its Texas facility. Furthermore, Southwest owns no property in Louisiana, has no equipment located in Louisiana, and pays no property or business taxes in Louisiana.[8] Accordingly, the Court finds Southwest lacks the necessary Louisiana contacts required for this Court to have general jurisdiction over non-resident defendant Southwest.

Plaintiff also alleges that the Court has specific jurisdiction over Southwest.[9] As set forth above, to determine whether specific jurisdiction exists, the Court "must examine the relationship among the defendant, the forum, and the litigation." *Holt Oil and Gas Corp. v. Harvey*, 801 F.2d 773, 924 (5th Cir. 1986). In making this inquiry, the Fifth Circuit follows a three-pronged test: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). If the first two prongs are met by Plaintiff's prima facie showing, the burden shifts to the non-resident

---

[8] *Id.*
[9] See Rec. Doc. 18 at 4.

defendant to defeat jurisdiction by demonstrating its exercise would be unfair or unreasonable. *See, e.g., Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

"If a defendant has deliberately engaged in significant activity in a state or created continuing obligations between itself and residents of the state, it has availed itself of the privilege of conducting business there; in such a circumstance, it is not unreasonable to require it to submit to the burdens of litigation in that forum." *Special Indus., Inc. v. Zamil Grp. Holding Co.,* 578 F. App'x 325, 328 (5th Cir. 2014) (citing *Burger King*, 471 U.S. at 475-76). "The requirement that a defendant's business activity be deliberate prevents jurisdiction from arising from mere 'random, fortuitous, or attenuated contacts, or [from] the unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King*, 471 U.S. at 475).

Even a single contact can provide specific jurisdiction if the contact creates a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 476 n.18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). It is well established, however, that merely contracting with a resident of the forum state is alone not sufficient to confer specific jurisdiction over a non-resident defendant. *Holt Oil and Gas Corp.* at 778 (5th Cir. 1986) (citing *Burger King*, 471 U.S. 462, 478-79)). Rather, the Court must additionally consider "prior negotiations," "contemplated future consequences," contract terms, and the "parties' actual course of dealing" to determine whether a contract amounts to a purposeful minimum contact with the forum state. *Burger King*, 471 U.S. at 479. Contractual relationships that anticipate "continuing and wide-reaching contacts"

in the forum state can provide sufficient minimum contacts to confer specific jurisdiction. *See, e.g., Burger King*, 471 U.S. at 480 (specific jurisdiction found in Florida forum where non-resident defendant and Florida corporation entered into a 20-year contract anticipating continuing and wide-reaching contacts in Florida); *McGee*, 355 U.S. at 223 (defendant's assumption of predecessor's obligations, subsequent mailing of offer of insurance to California insured, and receipt of premiums mailed from California conferred specific jurisdiction in California over non-resident defendant).

Applying the Fifth Circuit's test for specific jurisdiction, the Court must first determine whether Southwest established minimum contacts with the state of Louisiana by purposely directing its activities toward the state, or purposefully availing itself of the privilege of conducting activities here. As previously stated, the contract between Southwest and Canal Barge cannot in itself constitute a minimum contact without consideration of negotiations, contemplated consequences, contract terms, and actual course of dealing. In this instance, Southwest provided services to Canal Barge's vessel upon Canal Barge's order. Further, the contemplated future consequences of this contract were anticipated to occur in *Texas*: all work was to be performed at Southwest's facilities in Channelview, Texas, because it *only* maintains facilities in Texas.

Additionally, the parties' actual course of dealing demonstrates that Canal Barge regularly delivered barges to Southwest's facilities in Channelview, Texas, given the close proximity of Canal Barge's nearby fleeting facility, and that Southwest completed all work there. No long-term

continuing contractual relationship between the two, however, is alleged. In any event, moreover, it is far from apparent that the business relationship between Southwest and Canal Barge anticipated continuing and wide-reaching contacts in *Louisiana*. Thus, Southwest's contractual relationship with Canal Barge, considered alone, is insufficient to confer specific jurisdiction.

To bolster its specific jurisdiction argument, Plaintiff alleges Southwest purposely directed other activities toward Louisiana from which Southwest's provision of services to Canal Barge in Texas, and the resulting litigation, arose. In particular, Plaintiff again references the aforementioned sponsorship of annual charitable golf tournaments, its advertising in an accompanying JAGNO program, its participation in JAGNO's 2017 bowl-a-thon, its annual attendance at the International Workboat Show in New Orleans, its attendance at the formal christening of a towboat in Louisiana, its annual sales calls in Louisiana, and its four fishing trips in Louisiana over the prior two years for client development. Plaintiff argues Southwest purposefully directed these activities at Louisiana in hopes of attracting and maintaining business from Louisiana for Southwest's services in Texas. Plaintiff additionally emphasizes that Southwest does not deny that it initiated these activities, with the exception of Blessey Marine's invitation to witness the christening of a towboat in Louisiana.

The Court finds, on the limited showing made, that Plaintiff has failed to carry its burden of making a prima facie showing of specific personal jurisdiction as to defendant Southwest in this Louisiana forum. While Southwest's Executive Vice President and Chief Financial Officer Martin

DeCamp acknowledges that the activities cited by Plaintiff "are for the purpose of soliciting work to be conducted in Texas[,] and maintaining customer relations in anticipation of work being requested by [Southwest's] customers . . . whose barges and vessels are transiting Texas' waters," he further avers that the cleaning services at issue were "not the product of any particular contact with or travel . . . into Louisiana.[10] Rather, he attributes Southwest's being hired by Canal Barge to its "experience, pricing and favorable location as Canal's vessels pass through the Port of Houston and Canal's San Jacinto River fleeting area."[11]

In response, Plaintiff offers only vague and conclusory speculation that the necessary connection required for specific jurisdiction is present, while failing to even mention, much less account for, the logical significance of the close physical proximity of Canal Barge's Texas fleeting facility to Southwest's Channelview, Texas shipyard.[12] Although certain of aforementioned activities likely provided networking and marking opportunities to Southwest, e.g., attending the annual International Workboat Show in New Orleans,[13] and occasional Louisiana fishing trips, a direct tie to Canal Barge, however, is alleged relative to neither conduct. Under the given circumstances, such general assertions – without a specific evidentiary tie to Canal Barge and the barge cleaning services in question – are insufficient evidence of specific jurisdiction. *See Bristol-Myers Squibb Co., supra.* Finally, Plaintiff fails to demonstrate that it is

---

[10] *See* Affidavits of Martin DeCamp, Rec. Docs. 13-2 at and 22-1 at 2.
[11] Rec. Doc. 22-1 at 2.
[12] Notably, the Court is not aware of any request from Plaintiff for preliminary jurisdictional discovery directed to the origin and parameters of Canal Barge's contractual relationship(s) with Southwest.
[13] Significantly, Plaintiff offers no contradiction of Southwest's assertion that it has never set up or maintained a booth, demonstration, or advertising at the annual workboat show. *See* Rec. Doc. 22-1 at 2.

qualified, or possesses sufficient organizational knowledge, to speak on behalf of Canal Barge regarding the genesis and subsequent parameters of the contractual relationship at issue, i.e., that between *Canal Barge* and Southwest, not *Plaintiff* and Southwest.

To reach the conclusion that Southwest's relationship with Canal Barge arose from Southwest's limited contacts with Louisiana would require impermissibly attenuated inferences to be drawn. This the Court cannot do. Accordingly, Southwest's motion to dismiss Plaintiff's claims against it for lack of personal jurisdiction is granted.

## **CONCLUSION**

Because Plaintiff has failed to make a prima facie showing of the existence of general or specific personal jurisdiction over Defendant Southwest, **IT IS ORDERED** that "Defendant Southwest Shipyard, L.P.'s Rule 12(b)(2) Motion to Dismiss" (Rec. Doc. 13) is **GRANTED**. Accordingly, **IT IS FURTHER ORDERED** that Plaintiff Ergon Oil Purchasing, Inc.'s claims against Defendant Southwest Shipyard, L.P., be and hereby are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 26th day of June 2017.

**Kurt D. Engelhardt**
**United States District Judge**